IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ANGEL CAPPS                                                                                      PLAINTIFF


v.                                    CASE NO.        13-2076


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                        DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed an applications for DIB & SSI  on December 28, 2010, alleging an onset date of October 28, 1998, due to plaintiff's multiple sclerosis, arrhythmia, stroke, degenerative bone disease, sudden death syndrome, fibromyalgia, migraines, no left leg muscle, polycystic fibrosis, tumors in intestines, diabetes, low thyroid, epilepsy seizures, and depression. (T. 178).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

requested an administrative hearing, which was held on October 5, 2011.  Plaintiff was present and represented by counsel and  at the hearing, Plaintiff amended her onset date to January 4, 2011 (Tr. 36).

At the time of the administrative hearing, plaintiff was 40 years of age and possessed a college degree (T. 179).  The Plaintiff  had past relevant work ("PRW") experience as a  medical assistant, pharmacy tech, quality control, sales, and secretary.  (T. 180).

On March 8, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's fibromyalgia syndrome and medical condition affecting psychological factors did not meet or equal any Appendix 1 listing.  T. 16.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work with additional limitations.  T. 17-18.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as  motel/hotel maid and merchandise marker.  T. 25.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial

evidence.

**A.  Relevant Time Period:**

Plaintiff was insured for DIB until September 30, 1992 (Tr. 13). Plaintiff must prove that she was disabled before September 30, 1992, to be entitled to receive DIB benefits (Tr. 13). See *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992) (claimant who becomes disabled after the expiration of her insured status is not entitled to benefits under Title II of the Act). At the hearing Plaintiff amended her onset date to January 4, 2011 (Tr. 15, 36). Because Plaintiff's amended onset date after her date last insured under DIB, Plaintiff is not eligible for DIB benefits even if she proved disability after January 4, 2011.

Plaintiff filed her SSI application on December 28, 2010 (Tr. 13, 142-47). SSI benefits cannot be recovered retroactively. 20 C.F.R. § 416.335. Thus, the time period at issue is from January 4, 2011, Plaintiff's amended alleged onset date, through March 8, 2012, the date of the ALJ's decision (Tr. 13-25).

**B.  Step Two**

The Plaintiff claimed she was disabled because of Multiple Sclerosis, Arrythmia, Stroke, Degenerative Bone Disease, Sudden Death Syndrome, Fibromyalgis, Migraines, No Muscle in left leg, Polycystic Fibrosis, Tumors in Intestines, Diabetes, Low Thyroid, Epilepsy Seizures and Depression. (T. 178)

The ALJ found that the Plaintiff had severe impairments of "fibromyalgia syndrome and medical condition affecting psychological factors."  (T. 16).  The Plaintiff only contends the ALJ erred at step two in failing to find her alleged Multiple Sclerosis (MS) was a severe impairment. (ECF No. 14, p. 9).

The Plaintiff claimed in her initial application the she "saw Dr. Anderson in Austin Texas in 10/1998 who diagnosed me with MS" but she had no contact information for Dr. Anderson. (T. 184). The Plaintiff testified that "The MS started a long time before the diabetes started. I would wake up, and there were times that I had to be taken to the emergency room, because I would be paralyzed completely down my entire body. I would not be able to move at all. And, so, I that is a sensation that I get from the MS."  (T. 47).

It appears that medical records were requested from a Dr. Philip Leonard, MD in Austin Texas on January 27, 2011 but Dr. Leonard indicated that he did not have any medical records for the Plaintiff. (T. 277). Also, the Plaintiff failed to produce any medical records showing treatment for MS.  An attorney's failure to obtain requested medical evidence suggests that any evidence has only minor importance. *See Shannon v. Chater,* 54 F.3d 484, 486(8th Cir. 1995).

The McDonald criteria, which focus on clinical, laboratory, and radiologic evidence of lesions at different times and in different areas, is the most commonly used method of diagnosis with the Schumacher and Poser criteria being of mostly historical significance. [2] The Plaintiff's treating physician never diagnosed MS nor does it appear that he ever prescribed any medication for the condition of MS. A Multiple Sclerosis Questionnaire completed by Dr. Furr in October 2011 specifically stated that there was insufficient evidence to note any impairment in the Plaintiff's motor function, fatigue, or visual capabilities. (T. 296).  When the Plaintiff was seen by Dr. Chester Carlson in November 2011 for a physical exam he found the Plaintiff had NO identifiable functional limitations and that he found "no evidence of this pts stated complaints."

---

[2]Poser CM, Brinar VV (June 2004). "Diagnostic criteria for multiple sclerosis: an historical review". Clin Neurol Neurosurg 106 (3): 147–58.

(T. 303). Dr. Carlson also noted that Plaintiff put forth "very questionable effort throughout exam. (T. 301).

The court notes that the Plaintiff appeared at the Sparks Regional Medical Center ER on March 23, 2012 complaining of chest pain. That record contains a representation by the Plaintiff that she had been diagnosed with MS by Dr. Anderson in Austin, Texas (T. 380). It notes that she was "supposed to be on Copaxone[3] eventually for the MS, although she *just has not gotten it yet.*" (T. 381). It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). The court has not been provided with any evidence that the Plaintiff sought treatment for MS from the date she says she was diagnosed and the list of medications she says that she was on at the time she filed for disability do not have anything to do with the treatment or retardation of the effects of MS.

The court finds the ALJ's determination that the Plaintiff's alleged MS was not sever was proper.

**C. Residual Functional Capacity:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating

---

[3]Copaxone (glatiramer) is a combination of four amino acids (proteins) that affect the immune system. Copaxone is used to treat multiple sclerosis (MS) and to prevent relapse of MS.  Www.drugs.com

physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

Here, the ALJ found that Plaintiff had the RFC to perform light work, except that Plaintiff could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; and could not climb ladders, ropes, or scaffolds (Tr. 17-18). In addition, regarding her mental abilities, the ALJ found that Plaintiff was limited to work involving simple, routine, and repetitive tasks involving only simple, work-related decisions, with few, if any, workplace changes; and no more than incidental contact with co-workers, supervisors, and the general public (Tr. 18).

**1. Credibility:**

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ).  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  The court should , " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue*  687 F.3d 1086, 1091 (C.A.8 (Ark.),2012). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

This court concludes that, because the ALJ gave several valid reasons  for the ALJ's determination that Plaintiff was not entirely credible, and a review of the record by the court, the ALJ's credibility determination is entitled to deference, *see Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir.2012).

**2. Dr. Walz Opinion**

In January 2012, Dr. Walz, a consultative psychologist, examined Plaintiff (Tr. 21, 23, 367-72).  Dr. Walz noted that the Plaintiff "denied significant anxiety and depression a this time but appears to have intermittent anxiety and depression related to MS, medication side effects and situation." (T. 371)  Dr. Walz rendered a diagnosis of Medical Condition Affecting Psychological Factors and Cognitive Impairment Secondary to MS but placed her GAF in the 65-

70[4] range. (Id.). Dr. Walz then provided a Medical Source Statement finding that the Plaintiff had Moderate to Marked Limitations. (T. 374-375).

Dr. Walz prefaces her report by stating she was not provided any medical records for review. (T. 367). The Plaintiff then represented to Dr. Walz that she had MS and spondylosis and represented that her pain "has increased dramatically" and that some days she can barely move. (Id.). The Plaintiff also represented to Dr. Waltz that she "has a cane which was recommended by her doctor because of her MS." (T. 370). Dr. Waltz noted that she did not have a cane with her on the day of examination. (Id.).

Dr. Walz's opinion is based upon the history reported to her by the patient. This appears to be acceptable according to the DSM-5 which provides that there is "evidence from the history, physical examination, or laboratory finding that the neurocognitive disorder is the pathophysiological consequence of another medical condition." (DSM-5, p. 642). The Plaintiff's reported history to Dr. Walz, however, has absolutely no basis in the medical record.

The ALJ rejected Dr. Walz's diagnosis and opinion regarding Plaintiff's limitations because it was based upon a reported history by Plaintiff of multiple sclerosis (Tr. 21, 23, 369-71, 374-76). The ALJ found that Dr. Walz's assessment was inconsistent with the mostly normal mental status examination results (Tr. 23, 371). In addition, the ALJ found that Dr. Walz's assessment was inconsistent with Plaintiff's treatment records as a whole, as fully discussed above (Tr. 21, 23, 245-411).

The court finds that the ALJ properly evaluated rejected the restrictive conditions assessed by Dr. Walz.

---

[4] A GAF of 61-70 indicates "Some mild symptoms or some difficulty in social, occupational, or school functioning. DSM-IV-TR at 34.

### 3. Dr. Furr

Dr. Furr, the Plaintiff's treating physician, claimed that the Plaintiff meet the American Rheumatological criteria for fibromyalgia in October 2011 and gave her significant physical limitations. (T. 297, ¶9). In part he felt she could only walk for 15 minutes at a time and up to one hour in a day, and that she could only stand for 15 minutes at a time and up to 2 hours in a day. (T. 297). This is contrasted with the physical examination by Dr. Carlson who found the Plaintiff had no identifiable function limitations. (T. 303).

Fibromyalgia is an elusive diagnosis that is largely based on subjective complaints. *See Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009). The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. *Sarchet v. Chater* 78 F.3d 305, 306 -307 (C.A.7 (Ill.),1996).

Dr. Furr had treated the Plaintiff since 2009 and had never previously diagnosed the Plaintiff with Fibromyalgia and he does not identify which of the fixed locations on the body he believes qualify for the diagnoses. As the ALJ pointed out, Plaintiff's medical records showed no diagnosis for fibromyalgia and that her examinations revealed no findings that she met the criteria (Tr. 19-20, 269, 271). *See Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (explaining that "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (internal quotation marks and citation omitted)); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ

properly discounted the treating physician's opinion that consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (recognizing that "[w]e have upheld an ALJ's decision to discount a treating physician's [medical source statement] where the limitations listed on the form stand alone, and were never mentioned in [the physician's] numerous records o[f] treatment nor supported by any objective testing or reasoning" (first and second alterations added) (internal quotation marks and citation omitted)).

It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.' " *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir.1995). The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole. *Id*. *Johnson v. Apfel* 240 F.3d 1145, 1148 (C.A.8 (Neb.),2001)

Accordingly, the court finds that the ALJ properly discounted the opinion of the consulting psychologist and the treating physicians as to Plaintiff's residual functional capacity (RFC), *see Renstrom v. Astrue*, 680 F.3d 1057 at 1064 (treating physician's opinion does not automatically control); *Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir.2004) (generally when consulting physician examines claimant only once, his opinion is not considered substantial evidence); that Plaintiff failed to meet his burden of demonstrating his RFC, *see Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir.2012); and that the ALJ's first hypothetical to the vocational expert (VE) accounted for all of Plaintiff's proven impairments, *see Buckner v. Astrue*, 646 F.3d 549, 560–61 (8th Cir.2011) (VE's testimony constitutes substantial evidence when it is based on hypothetical that accounts for all of claimant's proven impairments; hypothetical must include

impairments that ALJ finds substantially supported by record as a whole).

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this February 24, 2014.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE